**In re NEWPORT OFFSHORE,
LTD., Debtor.**

**Bankruptcy No. 8500723.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 7, 1987.

**384**

Richard Bicki, Providence, R.I., for Newport Offshore, Ltd.

Everett Sammartino, Asst. U.S. Atty., Providence, R.I., for Dept. of the Army.

Matthew J. McGowan, Salter, McGowan, Swartz & Holden, Providence, R.I., for Trustee.

## DECISION AND ORDER GRANTING MOTION TO ENFORCE ORDER OF CONFIRMATION, AND ORDER TO SHOW CAUSE WHY THE DEPARTMENT OF THE ARMY SHOULD NOT BE HELD IN CONTEMPT

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Taken under advisement on August 26, 1987, after hearing on the Department of the Army's objection to the "Motion to Enforce Order Confirming Trustee's Plan of Reorganization and to Hold the United States Department of the Army in Contempt" filed jointly by the Trustee, the Creditors' Committee, Allied Marine, Inc. (the investor), and Newport Offshore, Ltd. ("NOL"), the reorganized debtor. At the hearing the motion was amended to encompass possible violations of the automatic stay. 11 U.S.C. § 362.

The pertinent facts are as follows:[1] On February 5, 1987, the trustee filed a disclosure statement and plan of reorganization. Pursuant to 11 U.S.C. § 1125, on February 12 a hearing on the adequacy of the disclosure statement was held. That same day, just prior to the hearing, the Army filed objections to the disclosure statement, and was allowed to argue said objections. During the hearing, the trustee and counsel for the Army agreed that the disclosure statement would be amended to include reference to the objections raised by the Army. Pursuant to that agreement, an amended disclosure statement addressing the Army's objections was filed, was unobjected to, and was approved on February 17. The hearing on confirmation of the plan was begun on March 4 and continued on March 12 and March 13, at which time the plan was accepted and informally approved, subject only to verification that the required deposit was on hand. Only one objection to confirmation was filed, by the United States Attorney on behalf of the Internal Revenue Service, and that was unrelated to any issue raised by the Army in the instant motion.[2] The Order confirming the plan was entered on April 3, 1987, after the Court was informed that the deposit required for the initial plan payment was on hand. Prior to its entry, on March 24, 1987, copies of the proposed order were sent to all parties in interest, including the Assistant United States Attorney who had represented the various branches of the

---

1. This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

2. That objection was resolved by our decision dated July 14, 1987.

government during the course of this Chapter 11 case. That order dealt specifically with the objection to confirmation raised by the IRS, and also disposed, in plain language, of setoff issues which had been present in the case from its inception. No objection to the proposed order was raised by the Army (or any other party) prior to its entry, no appeal was taken from the order, nor was a timely motion to amend or reconsider filed.[3]

Some time after entry of the confirmation order, NOL settled its claim with the United States Navy on the *YR–29* contract. The Navy has agreed that it owes NOL $783,680, but turned over only $297,796.60, holding $486,000 "in accordance with the Army's [setoff] request." *See* NOL Exhibit 12 (Letter of M.J. McCarthy, U.S.N., to Col. Paul Woodbury, dated May 21, 1987). The Army formally made the setoff request to the Navy on July 24, 1987, *see* NOL Exhibit 14 (Letter of Col. P. Woodbury to Commanding Officer, Navy Regional Finance Center), but the intent to setoff was clear, at least within the government, long before that date. *See* NOL Exhibit 15 (Memo of P.W. Connell to "Distribution," dated January 21, 1987).

NOL contends that the attempted setoff by the Army at this time violates the order of April 3, 1987, which states, in pertinent part

All holders of claims whose claims are discharged by this Order. except as explicitly provided in the Plan, shall be and hereby are permanently ENJOINED from commencing or continuing any action or proceeding or employing any process against the Debtor or reorganized Debtor in an attempt to obtain partial or full satisfaction of any such claim, or from enforcing or seeking to enforce any such claim or taking any steps which will lead to enforcement against the Debtor or reorganized Debtor of any such claim or enforcement of any such claim against any property of the Debtor or reorganized Debtor, including without limitation seeking to setoff against obligations

owed to the Debtor or reorganized Debtor, or seeking to create, perfect or enforce any lien against any property of the Debtor or reorganized Debtor and from all other acts against the Debtor or reorganized Debtor or property of either including but not limited to those acts described in Section 362(a) of the Code.[4]

In defending its actions, the Army makes two arguments. Initially, in response to the alleged violation of the confirmation order, it states that although it may have taken "preparatory steps" leading up to setoff, it never actually exercised its setoff rights because NOL invoiced the Navy for only $297,796.60, which has been paid. Under the Army view, setoff would not occur unless NOL invoiced the full $786,000 and then received payment for some lesser amount after the setoff were deducted. Second, the Army argues that it is entitled to setoff because the injunctive language of paragraph four, *supra*, does not apply to it. The logic of this argument is as follows: " 'The Code does not require that a plan of reorganization and a disclosure statement be separate documents,' " (quoting 5 *Collier on Bankruptcy* ¶ 1125.03[2] (15th ed. 1987)), which "can only be interpreted to mean that a disclosure statement is an integral part of the plan." *See* Army's Post-trial Memo at 1–2. Therefore, the Army argues, by objecting to the initial disclosure statement and having the setoff issue mentioned in the amended disclosure statement, its right to setoff was thereafter permanently preserved in the plan and was carried through, even post-confirmation, notwithstanding the language in that part of the order specifically enjoining setoff.

■ The Army's first argument may be disposed of quickly, and we conclude that the Army effected a setoff when it had the Navy withhold $486,000 from NOL in order to cover its alleged claims against NOL. The Army's metaphysical argument that, although it has "requested" this action, it has not yet actually exercised any right of

---

**3.** On August 31, 1987, the Army filed a motion seeking modification of the trustee's plan.

**4.** Besides the explicit reference in the order to setoff, 11 U.S.C. § 362(a)(7) also stays setoff.

setoff, is a distinction without a difference, and is rejected.[5] *See United States v. Norton*, 717 F.2d 767 (3d Cir.1983). *See also Hagan v. Heckler (In re Hagan)*, 41 B.R. 122, 127 (Bankr.D.R.I.1984) (agreeing with the *Norton* analysis). It has always been understood by all parties that recovery by NOL of its claims against the government is crucial, both to the reorganized debtor's ongoing business and to provide the funds for distribution to unsecured creditors under the plan. The procedure the Army now suggests, of requiring NOL to invoice the Navy for the full $786,000, in the face of its setoff "request," would only have delayed payment of the undisputed $297,796 to NOL and, resulted in further harm to NOL by depriving it of currently needed operating funds. In any event, the evidence is contrary to the notion that such action by NOL would have removed the Army's setoff argument, anyway.

■ The Army's second argument, that it is not bound by the language of the order enjoining setoff, is as devoid of merit as the first. Although the amended disclosure statement refers to the possibility of a setoff claim by the Army, it also advises that the "trustee believes no such right of setoff exists, that to attempt to setoff would be improper and in violation of bankruptcy and non-bankruptcy law, and will vigorously oppose any such attempt." *See* Amended Disclosure Statement, III(D)(2) at 18. The plan, in Article VII(E), provides that the Court will retain jurisdiction "[t]o hear, determine and enforce any and all causes of action, including actions to recover on government claims." Even reading the plan and amended disclosure statement as a single document, as the Army wishes us to, the typical holder of a claim, for whom the disclosure statement is intended, would reasonably conclude that a major dispute regarding claims against the government, and alleged setoffs thereto, still existed, and would have to be litigated. However, when the proposed order confirming the plan (and enjoining setoff) was circulated, the result was that the Army's claim of setoff, and all other possible claims of setoff, as well, against obligations owed to the debtor was no longer at issue. This conclusion is consistent with the fact that the order did in fact deal with the only objection to confirmation—that raised by the IRS. Since the sole objection to confirmation was specifically addressed in the order of confirmation, the only reasonable conclusion (and the law) is that all other matters were fully decided by the Order, 11 U.S.C. § 1141, *Stoll v. Gotlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), *Crabtree v. United States (In re Crabtree)*, 76 B.R. 208 (Bankr.M.D.Fla. 1987) (IRS cannot setoff after entry of order confirming a Chapter 11 plan), especially where no appeal was taken by any party allegedly aggrieved by the order. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987). *See generally* 5 Collier ¶ 1141.01, *supra.*

Now, five months later, based on the flimsiest of authority[6] and its own unique reasoning, the Army asserts that since language regarding its alleged right to setoff (a claim vigorously and at all times disputed by the debtor-in-possession, and later by the trustee) was included in the amended disclosure statement, the alleged right to setoff was permanently preserved. The Army maintains this stance even though: (1) it failed to object to confirmation, or to raise the setoff issue at the hearing on confirmation; (2) it remained silent as to

5. The Army's reliance on *In re Saugus General Hospital, Inc.*, 698 F.2d 42 (1st Cir.1983) is misplaced. In that case the First Circuit recognized that the creditor "accomplished the setoff in a practical sense." *Id.* at 47. Moreover, that setoff was accomplished pre-petition, and not after a confirmation order which specifically enjoined setoff.

6. The case cited in *Collier* on which the Army relies, *In re Bel Air Associates, Ltd.*, 2 C.B.C.2d 103 (Bankr.W.D.Okla.1980), is clearly distinguishable. In *Bel Air* no disclosure statement was filed and the court held that the plan itself was sufficiently detailed to serve as a disclosure statement, since it provided adequate information. The court did not hold that the plan and disclosure statement constitute a single document when they are filed separately. Even if *Bel Air Associates* stood for the proposition attributed to it by the Army, however, we would in this case decline to follow it, on the facts before us.

the circulated form of the proposed order, which clearly enjoined setoff; (3) it failed to appeal the order or seek its modification, until contempt proceedings were under way, and after "substantial consumation" of the plan. *See* 11 U.S.C. §§ 1101(2), 1127(b). In the context of this proceeding, there is absolutely no room for the position taken by the Army. Its conduct throughout the Chapter 11 case constitutes a waiver by the Army of any right to quarrel now with either the form or the substance of the order of confirmation.

In addition, in order to be eligible for setoff, the claims of the Army against NOL and of NOL against the Navy would all have had to be pre-petition. The amounts attributable to pre-petition versus post-petition claims depend on questions of fact which are undoubtedly disputed. If it were to succeed in effecting a setoff now, the Army would be unilaterally determining that *all* of its claims against NOL and all of the debt allegedly owed to NOL by the Navy are pre-petition obligations under 11 U.S.C. § 553(a). In the absence of an agreement, these are not matters subject to determination, sua sponte, by the Army. Therefore, for the foregoing reasons, as well as for the reasons advanced in the trustee's post-trial memorandum, we conclude that the Army waived its right to object to confirmation, and that the order confirming the plan permanently enjoins the Army from setting off any funds owed to NOL. *See In re Metropolitan International, Inc.,* 616 F.2d 83 (3d Cir.1980) (court could properly conclude that creditor waived any right to setoff, even though the waiver was based on the creditor's mistaken view of the law).[7]

For its own in-house reasons, the Army elected not to raise the setoff issue in a timely manner, and allowed the case to proceed through (and far beyond) the confirmation process. The arguments the Army now raises are simply *post-hoc* rationalizations to justify a strategy which was ill-advised at best, and possibly unethical. Although the Army was thinking set-

off since December, 1985, *see* NOL Exhibit 10 (Letter of E.M. Brown, dated December 27, 1985), the Army never formally asserted that right before this Court. In following that course, the Army avoided litigating the setoff issue, which probably would have had to be contested prior to confirmation. Now, despite the April 3 Order, it seeks to exercise an asserted right as if it had prevailed on the merits, after hearing. Such a result would undermine a confirmed plan which contains a formula for distributing funds received on government claims, and would reduce the dividend anticipated by unsecured creditors who relied on the finality of the April 3 Order. This strategy of silence and inaction was misleading to both the Court and creditors, since the plan would probably not have been accepted by creditors without the resolution of such a major issue (both factual and legal). Payment by the Navy of $783,680 on the *YR-29* contract, by itself, nearly triggers the third dividend to unsecured creditors. The setoff claim was the greatest uncertainty threatening confirmation. When the Army failed to object to confirmation, creditors had a right to assume that the third dividend was no longer a contingency, but an assured payment. The Army's silence and inaction lulled the interested parties into viewing the reorganization as workable, when, in reality, the Army alone knew that the entire complexion of this case was going to be affected by a subsequent resurrection of the setoff argument. Inequitable is too gentle a description for such tactics, and could itself be the basis for the Court disallowing any right of setoff by the Army. *See In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256, 265 (Bankr.D.Mass.1982) ("Court has discretion to invalidate the privilege of setoff where setoff would frustrate a Chapter 11 debtor's ability to reorganize") (citations omitted); *cf.* 4 *Collier* ¶ 553.07, *supra,* at 553–34 ("[u]nless properly asserted, the right of setoff may be waived and lost. The mere passage of time, however, will generally

---

7. *Metropolitan International, supra,* was decided under § 68 of the Bankruptcy Act of 1898. Section 553 of the Code is less expansive than § 68

and "represent[s] a decision by Congress to restrict the right of setoff." 4 *Collier* ¶ 553.01[4], *supra,* at 553–6.

not constitute a waiver of setoff *absent some inequitable conduct by the creditor or prejudice accruing to the debtor"*) (emphasis supplied). Because of and in addition to our findings and conclusions above, an Order to Show Cause why the Army should not be held in contempt should issue forthwith.

In addition, during the pendency of this case the Army has contended that it was unable to state the exact amount of its claim against the debtor until that amount was set by a Contracting Officer's Decision (COD). As we are now all aware, the COD was filed in July. Therefore, since it is in the interest of all parties to expedite the adjudication of the Army's claim, a pre-trial conference on the allowance of said claim is scheduled for October 29, 1987, at 3:00 p.m.