**In re The CHARTER COMPANY, et al., Debtors.**

**CHARTER CRUDE OIL COMPANY, and Charter International Oil Company, Plaintiffs,**

**v.**

**EXXON COMPANY, U.S.A., A DIVISION OF EXXON CORPORATION, Defendant.**

**No. 88–810–Civ–J–14.**
**Bankruptcy Nos. 84–289–BK–J–GP to 84–332–BK–J–GP and 85–1033–BK–J–GP.**
**Adv. Nos. 86–378, 86–384.**

United States District Court, M.D. Florida, Jacksonville Division.

April 20, 1989.

See also, 103 B.R. 310.

James H. Post and Raymond R. Magley, Smith & Hulsey, Jacksonville, Fla., for plaintiffs.

Hywel Leonard and Robert L. Ciotti, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant.

## ORDER

SUSAN H. BLACK, District Judge.

### I. *Background*

This case is before the Court upon the Amended Complaint For Turnover, Objection To Scheduled Liabilities, Declaratory Judgment And For Other Equitable Relief, by the plaintiff, Charter International Oil Company [hereinafter "CIOC"], Bankruptcy Court Adversary No. 86–384, [hereinafter "the CIOC case"], and the Amended Complaint For Turnover, Objection To Scheduled Liabilities, Declaratory Judgment And For Other Equitable Relief, filed by the plaintiff, Charter Crude Oil Company [hereinafter "CCOC"], Bankruptcy Court Adversary No. 86–378. [hereinafter "the CCOC case"]. Exxon Company, U.S.A., a division of Exxon Corporation [hereinafter "Exxon"] is the defendant in each of these proceedings. Each of the complaints were filed on June 11, 1987, in the United States Bankruptcy Court.

These matters were considered by the Honorable George L. Proctor, United States Bankruptcy Judge, pursuant to a standing order concerning the reference of all complaints related to bankruptcy cases. *See* Rule 104, Local Rules Of The United States Bankruptcy Court For The Middle District Of Florida.[1] On September 29, 1988, Judge Proctor initiated Case No. 88–810–Civ–J–14 in this Court by filing a Report and Recommendation and a proposed judgment in each of these proceedings.[2]

On November 3, 1988, Exxon filed consolidated objections to each Report and Recommendation. Exxon's objections are as follows:

1. The proposed conclusions of law deny to Exxon offsets totalling $1,555,123.

2. The proposed conclusions of law assess prejudgment interest at 18 percent based upon a holding which is contrary to governing law.

3. Contrary to the bankruptcy court's proposed findings, Exxon was fully authorized in withholding delivery to CIOC and CCOC.

4. Contrary to the bankruptcy court's proposal, Charter's failure to accept Exxon's November, 1984, tender was a failure to mitigate.

CIOC and CCOC filed a response to Exxon's objections on December 15, 1988. Exxon filed a reply to CIOC and CCOC's response on January 13, 1989. Exxon filed a Notice of Additional Authority on January 23, 1989. CIOC and CCOC filed a supplemental response to Exxon's reply on March 6, 1989. Exxon filed a supplemental reply on March 20, 1989.[3]

---

1. On June 19, 1987, Judge Proctor found that each of these adversary proceedings were non-core proceedings under 28 U.S.C. § 157(b)(3). On June 13, 1988, Judge Proctor consolidated each of these adversary proceedings for purposes of trial, and tried the cases on June 15, 1988, pursuant to 28 U.S.C. § 157(c)(1). Judge Proctor dismissed Counts IV and V in each of these adversary proceedings prior to trial on October 26, 1987.

2. Judge Proctor recommended the entry of a judgment in Adversary Proceeding No. 86–384 in the amount of $1,031,432.65 together with interest accruing at the prejudgment interest rate of 6% per annum from June 1, 1984, to the date of this order. He recommended the entry of a judgment in Adversary Proceeding No. 86–378: 1) the sum of $96,517.80 together with interest accruing at the prejudgment interest rate of 6% per annum from March 1, 1983, to the date of this order 2) the sum of $1,291,563.40 together with interest accruing at the rate of 18% per annum from May 21, 1984, to the date of this order, and 3) the sum of $379,279.21 together with interest accruing at the rate of 18% per annum from May 21, 1984, to the date of this order.

3. This Court in no way condones the rash of briefs filed in this case. The undue length of the briefs and the unnecessary complication of the issues in this case served only to frustrate

Pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033(d), the Court must conduct a *de novo* review as to matters to which a party has made specific and timely objections. The Court will address each of Exxon's objections in turn.

## II. *Setoff*

In the CCOC case Judge Proctor recommends that this Court enter a judgment for CCOC and against Exxon on the 060, 062, and 052 contracts in the total amount of $1,767,360.41, plus interest. Exxon argues that it is entitled to setoff this amount by its claim against CCOC in the amount of $1,555,122.46 so that its debt to CCOC is only $212,238.95.

■ A creditor's right to setoff is contrary to the Bankruptcy Code's dominant theme of equal treatment of creditors, because a setoff has the effect of paying one creditor more than another. Setoff rights are, therefore, strictly construed in bankruptcy proceedings. *See In re Lessig Construction*, 67 B.R. 436, 441 (Bankr.E.D.Pa. 1986).

■ Section 553 of the Code recognizes a creditor's right of setoff. The exercise of setoff rights, however, requires approval of the bankruptcy court, and such approval rests within the court's broad equitable discretion. *Norton*, 717 F.2d at 772.

■ Section 362(a)(7) of the Code specifically prohibits a creditor from taking a setoff without first obtaining relief from the automatic stay. A setoff taken without court approval constitutes a violation of the automatic stay. *See United States v. Norton*, 717 F.2d 767, 771 (3d Cir.1983). Actions taken in violation of the stay are void and without effect. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.

1984). The bankruptcy court is justified in denying a setoff to those creditors who violate the automatic stay. *In re Harris*, 19 B.R. 624, 626 (Bankr.E.D.Pa.1982).

■ In this case Exxon withheld money and product from CCOC after the petition date without court approval and, therefore, is in violation of the automatic stay of 11 U.S.C. § 362. The Court finds, therefore, that Exxon's failure to pay the funds owed to CCOC and deliver the product to CCOC constitutes "an unauthorized interference with the property of the Chapter 11 debtor without leave of the Court." *In re Wildcat Construction Co.*, 57 B.R. 981, 984 (Bankr.D.Vt.1986).

■ Furthermore, it is too late in the day for Exxon to seek a setoff from this Court. A creditor's setoff privilege is waived if the creditor fails to obtain bankruptcy court approval prior to confirmation of the debtor's plan of reorganization. *See In Re Newport Offshore Ltd.*, 78 B.R. 383 (Bankr.D.R.I.1987). In this case the plans of CIOC and CCOC were confirmed on December 18, 1986. Because Exxon did not seek bankruptcy court approval for its setoff prior to the date of confirmation, it waived any setoff privilege that it may have had.

■ The Court finds Exxon's other arguments for setoff equally without merit. The Court is not persuaded that CIOC or CCOC conceded Exxon's right to setoff or that such a concession if established would cure Exxon's waiver. The Court similarly finds Exxon's argument that it is entitled to a setoff under the "net settlement agreement" to be without merit. Such a setoff pursuant to an agreement and without leave of the bankruptcy court is prohibited under 11 U.S.C. § 362(a)(7) of the Code.[4]

the timely disposition of this case. Contrary to the suggestion of both counsel, Rule 3.01(b), Local Rules Of The United States District Court For The Middle District Of Florida applies to this proceeding and strictly prohibits the filing of a reply without leave of Court. Neither party moved for such permission prior to filing various reply briefs. Furthermore, Bankruptcy Rule 9033(b) contemplates only an objection and a response to the objection and no further pleadings. The Magistrate's denial of motions

to strike should not be construed as approval of such conduct by this Court.

4. Whether or not the debtor concluded such an agreement in an unrelated settlement with Mobil Oil has no effect on the propriety of that action or any relevance to this proceeding. Furthermore, it appears that Mobil Oil unlike Exxon obtained approval of the bankruptcy court to take its setoff within a short period after the petition date.

Finally, the Court is persuaded that the bankruptcy court did not deny Exxon's set-off by oversight. In any event, this Court has considered the setoff issue *de novo* and will deny Exxon's setoff regardless of whether or not the bankruptcy court overlooked Exxon's setoff.

This Court will, therefore, adopt, confirm, and make a part hereof the Report and Recommendation to the extent that it recommends that the Court enter judgment for CCOC and against Exxon on the 060, 062, and 052 contracts in the total amount of $1,767,360.41 plus interest.

### III. *Prejudgment Interest*

In the CCOC case, Judge Proctor recommends that the judgments on the 060 contract and the 062 contract include prejudgment interest accruing at the rate of 18 percent per annum from May 21, 1984, to the date of the judgment. Judge Proctor derived the 18 percent rate based on his finding that the parties agreed to such a rate of prejudgment interest. This agreement was manifested by the invoices CCOC sent to Exxon for payment of the amounts due on the 060 and 062 contracts. Those invoices stated that "interest at the maximum lawful rate will be charged on past-due amounts." Plaintiff's Exhibits 13 and 20. Because Exxon never objected to the invoices and because the invoices were payable on May 21, 1984, Judge Proctor found that prejudgment interest began accruing at that time. At that time the maximum legal rate of interest fluctuated between 18 percent and 21.5 percent, however, CCOC stipulated to the 18 percent rate.

Exxon argues that no agreement as to the maximum legal rate of interest can be inferred from CCOC's invoice and its silence on the issue. Exxon states that at no time had it ever paid interest for past-due amounts and that absent such conduct, no agreement can be inferred.

The Court finds the transactions contemplated in the 060 and 062 contracts involved the sale of goods between merchants, that CCOC made numerous sales to Exxon over a period of two years, that CCOC delivered invoices to Exxon stating that CCOC would charge the maximum legal rate of interest on past-due amounts in connection with its sales, and that Exxon never objected to that term on the invoices. The Court finds that such transactions established a course of conduct between the parties from which an agreement can be inferred. *See* Texas Business and Commerce Code, § 2.204(a); *Preston Farm and Ranch Supply v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex. 1981); *Delta (Del.) Petroleum & Energy v. Houston Fishing Tools,* 670 S.W.2d 295, 297 (Tex.Civ.App., Houston 1983). The Court will, therefore, award CCOC 18 percent prejudgment interest from May 21, 1984 to the date of the judgment for past-due amounts on the 060 and 062 contracts.

The Court finds *Triton Oil Gas v. Marine Contractors and Supply,* 644 S.W.2d 443 (Tex.1982) on which Exxon relies distinguishable from this case. The transaction in *Triton Oil* did not involve a sale of goods but an agreement by Triton to drill, complete, equip, and maintain a well for the production of oil and gas in exchange for Marine Contractors bearing one-third of the "cost, risk and expense." When Marine refused to pay its share of the expenses, Triton sent invoices reflecting a 10 percent interest charge. The Texas Supreme Court found that Marine's failure to object to the invoice did not constitute a course of conduct from which an agreement to pay the interest charge can be inferred.

Unlike the instant case, *Triton Oil* did not involve a sale of goods and the Texas Supreme Court, therefore, did not apply the Texas Business and Commerce Code § 2.204(a). In addition, the *Triton Oil* court cited *Preston Farm* with approval stating that "continued payments and purchases after receipt of the interest-charging invoices constituted evidence of an agreement between the parties to pay interest as merchants under the Uniform Commercial Code." *Triton Oil,* 644 S.W.2d at 445. The court distinguished *Preston Farm* from the situation in *Triton Oil* in that *Triton Oil* involved a single transaction rather than a series of purchases of goods.

The instant case falls squarely under *Preston Farm* in that Exxon continued to make purchases of oil from CCOC, Exxon continued to make payments for that oil to CCOC, Exxon continued to receive invoices containing the interest provision, and Exxon never objected to the interest. This case differs from the case in *Triton Oil* in which parties entered into a single transaction and not a course of transactions over a period of two years. Also, unlike *Triton Oil,* there were numerous purchases on which Exxon did make payments to CCOC based on the disputed invoices.

The Court will, therefore, adopt, confirm, and make a part hereof the Report and Recommendation to the extent that it recommends awarding CCOC 18 percent interest on the 060 and 062 contracts from May 21, 1984, to the date of this judgment.

## IV. *Propriety Of Exxon's Withholding Delivery Of Product And Payment For Product*

■ Judge Proctor recommends that this Court find that Exxon was not justified in withholding delivery of product and payments for product to CCOC and CIOC under the Exchange Contract, the 060 contract, the 062 contract, and the 052 contract. In particular, Judge Proctor found that the provision in each of these contracts authorizing setoff, as well as Texas law, prohibited Exxon from withholding deliveries and payments for the purpose of setting off these amounts against any amounts due Exxon from CCOC and CIOC in the *Rollert* action, an unrelated litigation.

Judge Proctor found that the setoff provisions in each of the contracts permitted withholding payment if CIOC or CCOC failed to make timely payments of any money due Exxon or failed to deliver any product due Exxon. By negative inference from this provision, Judge Proctor found that the absence of any other conditions under which Exxon could withhold payments or deliveries constituted a prohibition of withholding under other unenumerated conditions. In particular, Exxon could not withhold product or payment for product to setoff that debt against a contingent debt in the *Rollert* action.

Exxon argues that no negative inference can be drawn from the contract provision authorizing setoff. That provision is as follows:

*Setoff*—in the event either party shall fail to make timely delivery of any product(s) due and owing to the other party, or in the event either party shall fail to make timely payment of any monies due and owing to the other party, the other party may offset any deliveries or payments due under this or any other agreement between the parties.

Plaintiff's Exhibits 1, 3, 4, 11, 12, 15, and 16.

This Court must apply principles of contract interpretation in construing the contracts in this case. The principles applicable in this case are summarized as follows:

[T]he terms used in the contract must be given their plain, ordinary and generally accepted meaning unless the instrument itself shows the terms are used in a different sense.... Moreover, in construing the agreement we must adhere to the maxim that 'the expression of one thing is the exclusion of another thing.'

*Phillips Petroleum Co. v. Gillman,* 593 S.W.2d 152, 154 (Tex.Civ.App.1980). In this case the contracts each contained a provision concerning setoff. That provision authorized Exxon to "offset any deliveries or payments due under this or any other agreement between the parties" under two conditions. Those conditions are either the failure of CCOC or CIOC to make payments to Exxon under the contracts or deliveries to Exxon under the contracts. The contracts do not expressly authorize Exxon to withhold payments to offset a contingent liability such as the *Rollert* litigation. It is reasonable to expect that sophisticated merchants could have included such a condition in their contract if they in fact intended such a condition. The absence of express authority in the contract for Exxon to offset such a contingent debt against the money and product Exxon owed CCOC and CIOC,

therefore, may reasonably be interpreted as the exclusion of such authority.

The Court, therefore, finds that Judge Proctor correctly recommends that the Court find that Exxon breached the Exchange Contract, and the 060, 062, and 052 contracts. The Court will, therefore, adopt, confirm, and make a part hereof the Report and Recommendation to that extent. In light of the contract, it is unnecessary for the Court to analyze Texas law as an independent ground for this holding.

The Court finds Exxon's remaining arguments in support of its withholding of deliveries and payments under those contracts to be without merit. In particular, the Court rejects Exxon's argument that its withholding deliveries and payments was justified 1) because CIOC never demanded delivery of the balance due under the CIOC Exchange Agreement, 2) because CIOC did not make proper arrangements to receive delivery, 3) because the amounts owed between the parties on the various contracts or in the Rollert litigation had not been established, or 4) because the parties agreed that Exxon could withhold delivery of product and payment pending the end of the *Rollert* litigation. These arguments are not supported by the record or applicable law.

### V. *Tender/Mitigation*

On November 19, 1984, Exxon proposed a stipulation to CIOC and CCOC by which Exxon would satisfy the pre-petition debts and product balances using product prices as of September 30, 1984. Exxon proposed to pay CIOC $839,814.54 and CCOC $288,717.28 for a total of $1,128,531.80. Exxon owed CIOC the net amount of $1,031,432.65 and CCOC the net amount of $245,736.00 CIOC for a total of $1,255,168.60. CIOC and CCOC rejected these offers. Exxon argues that CIOC and CCOC's rejections constitute a failure to mitigate damages and that CIOC and CCOC's recovery should, therefore, be reduced.

The bankruptcy court rejected Exxon's argument. Judge Proctor found that the proposed stipulation was not a valid and

legal tender because it was subject to conditions, was not an offer to pay the entire amount due CIOC and CCOC and Exxon's tender did not allow CIOC to accept payment "without special effort."

A tender is an unconditional offer to pay the entire amount owed. *Baucum v. Great American Insurance Company of New York*, 370 S.W.2d 863, 866 (Tex.1963). The Court finds that Exxon's proposed stipulation was not unconditional in that its acceptance by CIOC and CCOC was conditioned on bankruptcy court approval. Contrary to Exxon's contention, CIOC and CCOC did not have a right to insist on bankruptcy court approval of a settlement. Other creditors, however, could have interposed objections to the settlement and the bankruptcy court could have rejected the settlement. It is unnecessary for this Court to speculate as to whether or not bankruptcy court approval would have been given. It is sufficient that bankruptcy court approval is considered "a condition" as that term is used in defining "tender."

The Court further finds that Exxon did not offer the entire amount owed to CIOC and CCOC. On its face, the proposed stipulation did not offer CIOC and CCOC the full amount, and the proposed stipulation, therefore, could not have been a tender. The Court rejects Exxon's argument that it in fact offered more than the net amount due to CIOC and CCOC. Exxon without basis excludes post-petition debts and interest accrued on past-due amounts in characterizing its proposed stipulation as a tender. The Court rejects the exclusion of post-petition debts and interest. Exxon also quarrels with the valuation of its past-due product on the due date of June 1, 1984. The Court also rejects this objection.

The Court need not address Exxon's other reasons for characterizing its proposed stipulation as a tender. Based on the foregoing reasons, the Court finds that the proposed stipulation was not a tender and that CIOC and CCOC did not fail to miti-

gate their damages. The Court will, therefore, adopt, confirm, and make a part hereof the bankruptcy court's analysis of CIOC and CCOC's mitigation of damages.

### VI. *CCOC Debts To Exxon*

Exxon did not file a specific objection to the CCOC Report and Recommendation as to the finding that Exxon would be entitled to a claim against CCOC on the 061 Contract in the amount of $1,431,173.53. Exxon did indicate in its briefs that it agreed with the bankruptcy court's finding as to the 061 Contract, but argued that CCOC owed Exxon additional debts to which CCOC stipulated. *See* Exxon's Reply To Charter's Response To Exxon's Objections To The Bankruptcy Court's Proposed Findings Of Fact And Conclusions Of Law at 10 n. 7, filed January 13, 1989. Exxon argues that the bankruptcy court "overlooked" a $90,448.93 debt for a division crude purchase and a $33,500.00 debt for a recertification invoice owed to Exxon by CCOC.[5] Recognition of these debts would bring CCOC's liability to Exxon to $1,555,122.46. CCOC apparently agrees that Exxon has claims against it in the amount of $1,555,-122.46. *See* Response Of Charter International Oil Company And Charter Crude Oil Company To Exxon's Objections To The Bankruptcy Court's Proposed Findings Of Fact And Conclusions Of Law at 1, filed December 15, 1988.

The Court will adopt, confirm, and make a part hereof the bankruptcy court's Report and Recommendation to the extent that it recommends allowance of Exxon's claim against CCOC on the 061 contract in the amount of $1,431,173.53. The Court will further allow Exxon's claim against CCOC for a division crude purchase in the amount of $90,448.93 and Exxon's claim against CCOC for a recertification invoice in the amount of $33,500.00 in light of CCOC's apparent agreement to the same. The Court finds, therefore, that Exxon is entitled to an unsecured claim against CCOC in the total amount of $1,555,122.46.

### VII. *Conclusion*

The Court has reviewed *de novo* the bankruptcy court's Report and Recommendation in each adversary proceeding, the parties' various memoranda submitted to this Court, and the record as a whole. The Court finds the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–384 and the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–378, filed herein on September 29, 1988, are correct as a whole and will adopt, confirm, and make them a part hereof to the extent that the Court has not already done so above.

*Accordingly, it is*

ORDERED:

1. That Exxon's objections to the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–384 and the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–378 are hereby overruled.

2. That the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–384 and the bankruptcy court's Report and Recommendation in Bankruptcy Adversary Proceeding No. 86–378, filed herein on September 29, 1988, are hereby adopted and confirmed and made a part hereof.

3. That the Clerk of the Court shall enter judgment in this case as follows:

a. Judgment for CCOC and against Exxon on the 052 contract in the amount of $96,517.80, together with interest accruing at the pre-judgment interest rate of 6 percent per annum from March 1, 1983, to the date of the judgment.

b. Judgment for CCOC and against Exxon on the 060 contract in the amount of $1,291,563.40, together with interest accruing at the rate of 18 percent per annum

---

5. The bankruptcy court recognized that the $90,448.93 debt was for "division crude order purchases made in March and April, 1984." The bankruptcy court also stated that this debt was due based on a purchase unrelated to this adversary proceeding. The bankruptcy court did not mention the $33,500.00 debt except to include it in a chart under "Pre–Petition Due Exxon." Exxon represents that this debt was due to a "recertification invoice."

from May 21, 1984, to the date of the judgment.

c. Judgment for CCOC and against Exxon on the 062 contract in the amount of $379,279.21, together with interest accruing at the rate of 18 percent per annum from May 21, 1984, to the date of the judgment.

d. Judgment for CIOC and against Exxon on the Exchange Contract in the amount of $1,031,432.65, together with interest accruing at the prejudgment interest rate of 6 percent per annum from June 1, 1984, to the date of the judgment.

e. Judgment for Exxon and against CCOC to the extent that unsecured claims shall be allowed by the bankruptcy court on the 061 Contract in the amount of $1,431,173.53, for a division crude purchase in the amount of $90,448.93, and for a recertification invoice in the amount of $33,500.00, for a total unsecured debt of $1,555,122.46.

DONE AND ORDERED.