**In re Margaret Louise BOURNE, Debtor.**

No. 00–21156.

United States Bankruptcy Court, E.D. Tennessee.

March 2, 2001.

Helen C.T. Smith, Greeneville, for the United States of America, Department of Housing and Urban Development and Internal Revenue Service.

George Todd East, Dave B. Jordan, Kingsport, for Margaret Bourne.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This case presents the primary question of whether the Internal Revenue Service ("IRS") may assert a right of offset in the debtor's tax refund which the debtor has claimed exempt. For the reasons discussed below, the court answers the question in the affirmative, disagreeing with the majority of courts which have concluded otherwise. Also considered herein is whether a right of setoff survives discharge, whether the IRS's inadvertent violation of the automatic stay precludes setoff, and whether the IRS should be granted retroactive relief from the stay. The answers to these questions as posed are yes, no, and yes. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (B), (G) and (O).

I.

According to the stipulations filed by the parties, on May 10, 1990, the debtor and her adult daughter secured a loan in the amount of $65,331 for the purchase of a manufactured house for the daughter. Repayment of the loan was guaranteed by the Department of Housing and Urban Development ("HUD"). When the debtor and her daughter defaulted on the loan in 1992, the loan was repaid by HUD, who succeeded to the lender's interest. Although no voluntary payments have been made to HUD since that time, a total of $5,398 "in involuntary payments effectuated by the Internal Revenue Service under the tax refund offset program" has been credited against the indebtedness.

The debtor filed for chapter 7 relief on May 2, 2000, initiating the case which is presently before this court. At the time of the bankruptcy filing, the amount of the debtor's obligation to HUD was $33,079. Nonetheless, the debtor failed to schedule HUD as a creditor in her original bankruptcy schedules, although she did reference the HUD obligation in response to one of the questions on her statement of financial affairs. The debtor scheduled as an asset a 1999 federal income tax refund "in an amount up to $2700" and claimed this amount as exempt under TENN. CODE ANN. § 26-2-102.

Prior to the April 17, 2000 deadline, the debtor filed her 1999 federal income tax return, which indicated that she was entitled to a refund of overpaid taxes in the amount of $2,534. On June 30, 2000, "[p]ursuant to 26 U.S.C. § 6402(d) and 26 C.F.R. § 301.6402-6, the Internal Revenue Service applied the $2,534 overpayment of the debtor's 1999 federal income tax refund to the debtor's $33,079 debt to HUD."

On July 10, 2000, the debtor amended her *Schedule F* and creditor matrix in order to add HUD as a creditor. A discharge order was entered on August 4, 2000, and on September 28, 2000, the United States of America, on behalf of HUD and the IRS, moved for post facto relief from the automatic stay in order to validate the previous offset. The debtor objected and requested that the court order the return of the tax refund and award the debtor her attorney's fees because of the IRS's violation of the automatic stay.

The parties have agreed that this matter is appropriate for resolution based on stipulations of fact and memoranda of law. In their joint stipulation filed on January 5, 2001, the parties fashioned the following issues for resolution by this court:

A. Whether the United States has the right to setoff the debtor's 1999 fed-

eral income tax refund against her debt to HUD?

B. Whether the court should modify the stay post facto to allow the United States to offset the debtor's 1999 federal income tax refund against her debt to HUD?

C. Whether the United States' inadvertent violation of the automatic stay precludes the United States' right of setoff?

D. Whether the debtor's discharge bars relief from the automatic stay?

E. Whether the exemptions claimed by the debtor limit the United States' right to offset the debts?

Although not necessarily in the format presented, the court will address each of these issues raised by the parties, beginning with whether the United States has a right of offset.

## II.

### A. GENERAL RIGHT OF OFFSET

■ Section 553 of the Bankruptcy Code addresses setoff in the bankruptcy context. It provides in part the following:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

The United States Supreme Court has noted that § 553 does not create a federal right of offset; it only preserves in bankruptcy whatever right otherwise exists. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). "The right of setoff (also called 'offset') allows entities that owe each

other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Id.* (quoting *Studley v. Boylston Nat'l Bank of Boston,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)). Section 553 preserves the right of setoff where there are mutual, prepetition obligations owing between the debtor and the creditor and a right to setoff the obligations exists under nonbankruptcy law. *In re Holder,* 182 B.R. 770, 775 (Bankr.M.D.Tenn.1995).

There has been no allegation by the debtor in the present case that either her obligation to HUD or the IRS's obligation to her did not arise prepetition. The debtor's obligation to HUD at a minimum arose in 1992 when HUD acceded to the lender's position. The IRS's obligation to the debtor to refund her overpayment of income taxes in 1999 arose at the end of 1999 prior to her bankruptcy filing in May 2000. *See In re Conti,* 50 B.R. 142, 148 (Bankr.E.D.Va.1985) (IRS's obligation to pay 1982 tax refund to the debtor arose as of December 31, 1982, the end of the debtor's tax year, subject only to the debtor's filing a tax return claiming the refund within the required time limitations).

 The debtor does argue, however, that the obligations are not mutual. She notes that she owes HUD, not the IRS, and maintains that separate agencies of the federal government do not constitute the same creditor for offset purposes. This issue was resolved by this court in its unreported decision in *In re Bowling,* No. 98–20054 (July 2, 1998), wherein the majority view that the United States and its various agencies and departments comprise a unitary creditor was adopted. *Id.* (citing *Lopes v. United States Dep't of Housing and Urban. Dev. (In re Lopes),* 211 B.R. 443, 445 (D.R.I.1997); *In re Holder,* 182 B.R. at 775). This court has reviewed that decision and the case law

published since that time and sees no reason to reverse its earlier conclusion. *See, e.g., United States v. Maxwell,* 157 F.3d 1099 (7th Cir.1998) (offset of debtor's debt to Small Business Administration permitted against Navy's debt to debtor).

Because mutual, prepetition obligations between the debtor and the United States have been established, it must be determined whether a right to setoff exists outside of bankruptcy, under either state or other federal law. According to the stipulations, the setoff exercised by the United States was effectuated pursuant to 26 U.S.C. § 6402(d), which provides the following:

Collection of debts owed to Federal agencies.—

(1) In general.—Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than past-due support subject to the provisions of subsection (c)) to such agency, the Secretary [of the Treasury] shall—

(A) reduce the amount of any overpayment payable to such person by the amount of such debt;

(B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

(C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

 This federal intercept statute, which was enacted as part of the Deficit Reduction Act of 1984, allows the IRS to offset a tax refund against any debt which the taxpayer may owe a federal agency. *Bosarge v. United States Dep't of Educ.,* 5 F.3d 1414, 1417 (11th Cir.1993). Furthermore, this offset right trumps an individual's claim of exemption. *Id.* In *Bosarge,* an individual sued the federal government

in order to recover a tax refund which the IRS had intercepted pursuant to 26 U.S.C. § 6402(d) and applied to the individual's past-due student loan owed to the Department of Education. The individual argued that the tax refund should be turned over to him because he had claimed it exempt under Alabama law. The Eleventh Court of Appeals disagreed with the debtor and held for the United States. *Bosarge,* 5 F.3d at 1415–16.

The *Bosarge* court noted that 26 U.S.C. § 6402(d), the federal intercept statute, and its companion statute, 31 U.S.C. § 3720A, which sets forth the procedure for the intercept, "make[ ] no allowance for state law personal property exemptions." *Id.* at 1418. The court contrasted these provisions with the Federal Debt Collection Procedures Act of 1990 ("FDCPA"), 28 U.S.C. §§ 3001–3308, which expressly recognizes exemption rights. *Id.* The court concluded that the intercept statutes rather than the FDCPA applied because the "FDCPA expressly disclaims any intent to 'supersede or modify the operation of statutory rights to setoff.' " *Id.* at 1419 (citing 28 U.S.C. § 3003(c)(6)). Since the intercept statutes make no exceptions for exemptions, the court held that state law exemption rights may not defeat the federal government's setoff rights pursuant to the doctrine of preemption under the Supremacy Clause of the United States Constitution. *Id.*

As applied to the present case, it is clear that but for the debtor's bankruptcy filing, the federal government would have a statutory right under 26 U.S.C. § 6402(d) to offset the debtor's tax refund against her liability to HUD, notwithstanding her state law exemption claim. And since § 553 of the Bankruptcy Code is designed to preserve in bankruptcy any right of offset to the extent the obligations are mutual and arose prepetition, it would appear that the United States' offset right should not be affected by the debtor's bankruptcy case. Whether it is will be discussed in the next section.

B. *Effect of Debtor's Exemption Claim in Bankruptcy*

11 U.S.C. § 522 governs the exemptions available to a debtor in a bankruptcy case and provides that the debtor may elect certain specified federal exemptions set forth in § 522(d) or the exemptions available to a debtor under applicable state and nonbankruptcy federal law, unless the state has opted out of the federal bankruptcy exemptions. *See In re Sumerell,* 194 B.R. 818, 824 (Bankr.E.D.Tenn.1996) (citing 11 U.S.C. § 522(b)(1)). Tennessee, along with the majority of other states, has opted out of the federal bankruptcy exemption scheme, making those particular federal exemptions unavailable to a debtor who resides in Tennessee. *Id.* (citing Tenn. Code. Ann. § 26–2–112).

■ Regardless of whether exemptions are claimed pursuant to state law because the state has opted out or the federal bankruptcy scheme, property exempted from the bankruptcy estate as a general rule is not liable for prepetition debts unless the debts fall within certain specified exceptions. Section 522(c) of the Bankruptcy Code provides:

Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section

544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

█ Unless the offset right held by the United States in the present case falls within one of the exceptions set forth in section 522(c), there would appear to be a conflict between section 553, which preserves the United States' right of offset even against a claim of exemption, and section 522(c) which provides that property claimed exempt is not liable for prepetition debts. The exceptions in paragraphs (1) and (3) of § 522(c) pertain to certain nondischargeable debts and the exception in paragraph (2) applies to debts secured by a lien. *United States v. Jones (In re Jones)*, 230 B.R. 875, 879 (M.D.Ala.1999). None of these exceptions apply herein. The parties have stipulated that the debtor's obligation to HUD is dischargeable and there has been no allegation that the debt is presently secured by a lien. Section 506(a) [1] of the Bankruptcy Code does provide that a creditor with a right to offset under section 553 has a secured claim to the extent of the amount of the offset, although it is not clear that such secured status is the equivalent of a "debt secured by a lien" within the contemplation of section 522(c)(2). *Compare Pieri v. Lysenko (In re Pieri)*, 86 B.R. 208, 211 (9th Cir. BAP 1988) (court concluded that "the secured status that Congress accorded setoff rights for the purpose of bankruptcy administration would [not] elevate those rights to permanent lien status against the property"), *with Teamsters Credit Union v. Lee (Matter of Lee)*, 40 B.R. 123, 124 n. 2 (Bankr.E.D.Mich.1984)(debtor had no basis to claim property subject to setoff as exempt in light of the secured status accorded setoff rights and § 522(c)(2)'s exception for secured claims). *See also Official Comm. of Unsecured Creditors v. American Sterilizer (In re Comptronix Corp.)*, 239 B.R. 357, 362 (Bankr.M.D.Tenn.1999)("A right to setoff is not the same under state law as a security interest."); *In re Holder*, 182 B.R. at 776 ("The common law concept of setoff is a right, not a lien."); *In re Strober*, 136 B.R. 614, 620 (Bankr.E.D.N.Y.1992)("The 'claim of a creditor secured by a lien on property' is not necessarily a 'secured claim.' ").

This court can find no guidance in the legislative history to either sections 506(a) or 522(c)(2) and little in the two cases which have directly addressed whether section 506(a)'s treatment of a setoff right as a secured claim constitutes a lien for purposes of section 522(c). *See In re Pieri*

---

**1.** 11 U.S.C. § 506(a) states as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

*and Matter of Lee, supra.* In the *Pieri* decision, the bankruptcy appellate panel found the issue to be "intriguing," but noted that it was "doubtful that a creditor can hold an allowed secured claim on exempt property that survives bankruptcy." *In re Pieri*, 86 B.R. at 212. Section 101(37) of the Bankruptcy Code defines "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." The legislative history to this definition states that it "is new and is very broad" and "includes inchoate liens." H.R. REP. No. 95–595, 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6269; S. REP. No. 95–989, 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5811. "In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens." *Id.* An offset right does not fall within these three categories and it does not appear that setoff has historically been considered a common law lien, notwithstanding statements by some courts equating the two concepts. *See* 4 COLLIER ON BANKRUPTCY ¶ 506.03[1][b] (15th ed. rev. 2000) (Although "a right of setoff is not quite the same thing as a mortgage or a security interest, . . . in practical terms, there is little to distinguish between a creditor's status arising from a right of setoff and its status arising from some other type of security entitlement.") (citing *Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc.)*, 362 F.2d 111, 114 (2d Cir.1966)(right to setoff is "security of the most perfect kind"); *Baker v. Troiano (In*

*re Lehigh and Hudson River Ry. Co.)*, 468 F.2d 430, 434 (2d Cir.1972)(describing right of setoff as "the finest kind of security")).

It would appear that if Congress had intended the phrase "debt secured by a lien" as utilized in § 522(c) to mean secured claim within the meaning of § 506(a), it could have readily used the terminology "secured claim" as it did in other provisions of the Bankruptcy Code. *See, e.g.,* 11 U.S.C. § 326(a) ("parties in interest . . . including holders of secured claims"); § 1111(b)(2) ("such claim is a secured claim"); § 1129(b)(2)(A) ("class of secured claims"); and § 1222(b)(2),(4),(5) and (9) ("secured claim" or "secured claims"). Congress' use of the word "lien" in section 522(c)(2) rather than "secured claim" suggests the terms are not synonymous and should not be treated as such. *See United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1186 (6th Cir. 1982)("the use of different language creates an inference that Congress meant different things"). Accordingly, the court concludes that a creditor who has a secured claim under § 506(a) because it has a right of setoff under § 553 does not fall within the lien exception of § 522(c)(2).

■ Because a right of offset does not fall within any of the exceptions to § 522(c), many courts have concluded that there is a conflict between § 522(c) and § 553. *See, e.g., In re Jones,* 230 B.R. at 879 (recognizing conflict). The majority of courts which have attempted to reconcile this conflict have found that § 522(c) trumps § 553 such that an offset may not be exercised in exempt property.[2] *See In*

---

**2.** A few of the courts which considered the issue of whether a right of offset may be exercised against exempt property have not found it necessary to resolve a conflict since they have found no offset right preserved by § 553. As noted previously, § 553 simply preserves in bankruptcy, subject to certain limitations, an offset right under state or other federal law. These courts have concluded that under state law, there is no right to offset in exempt property. Thus, there is no right of offset under nonbankruptcy law preserved by

*re Jones,* 230 B.R. at 879; *In re Pace,* 257 B.R. 918, 920 (Bankr.W.D.Mo.2000); *United States v. Killen (In re Killen),* 249 B.R. 585, 588 (Bankr.D.Conn.2000); *Alexander v. Commission, IRS (In re Alexander),* 225 B.R. 145, 149 (Bankr.W.D.Ky.1998); *Thompson v. Board of Trustees (In re Thompson),* 182 B.R. 140, 153–54 (Bankr. E.D.Va.1995); *In re Miel,* 134 B.R. 229, 236 (Bankr.W.D.Mich.1991); *In re Cabrillo,* 101 B.R. 443, 448–49 (Bankr.E.D.Pa. 1989); *In re Davies,* 27 B.R. 898, 901 (Bankr.E.D.N.Y.1983); *In re Monteith,* 23 B.R. 601, 602 (Bankr.N.D.Ohio 1982); *Terry v. Gordon's Jewelry Co. of Virginia, Inc. (In re Terry),* 7 B.R. 880, 883 (Bankr. E.D.Va.1980). *But see In re Pieri,* 86 B.R. at 212; *United States v. Luongo,* 255 B.R. 424, 427 (N.D.Tex.2000); *Wiegand v. Tahquamenon Area Credit Union (In re Wiegand),* 199 B.R. 639, 642 (W.D.Mich.1996); *Posey v. United States Dep't of Treasury—IRS,* 156 B.R. 910, 915–16 (W.D.N.Y.1993); *Runnels v. IRS (In re Runnels),* 134 B.R. 562, 564 (Bankr. E.D.Tex.1991); *Eggemeyer v. IRS (In re Eggemeyer),* 75 B.R. 20, 22 (Bankr.S.D.Ill. 1987); *Sarkis v. American State Bank of Rapid City (In re Sarkis),* 17 B.R. 174, 176 (Bankr.D.S.D.1982).

The majority courts' position has been based primarily on three considerations. The first basis is that allowing the exemption right under § 522 to prevail over § 553 offset privileges gives effect to both § 553 and § 522(c) and prevents a nullification of § 522(c). *See In re Jones,* 230 B.R. at 880; *In re Alexander,* 225 B.R. at 149; *In re Miel,* 134 B.R. at 235; *In re Monteith,* 23 B.R. at 603. The second rationale is that the majority rule furthers "the chief policy behind the Bankruptcy Code—providing the debtor with a fresh start." *In re Jones,* 230 B.R. at 880. *See also In re Alexander,* 225 B.R. at 149 (citing *In re Miel,* 134 B.R. at 236; *In re Cole,* 104 B.R. at 738; *In re Wilde,* 85 B.R. at 148). The third asserted basis is that the legislative history to § 522 purportedly supports this conclusion. *In re Jones,* 230 B.R. at 880–81; *In re Alexander,* 225 B.R. at 150; *In re Monteith,* 23 B.R. at 604. These courts note that when the Bankruptcy Reform Act of 1978 was being considered, the Senate version of § 522(c) provided an exception for "taxes owing to a governmental unit" which would include

---

§ 553. *See In re Hunt,* 250 B.R. 482, 487 (Bankr.E.D.N.Y.2000)("New York State legislature intended to exempt the proceeds of pension funds from 'any other process' including setoff."); *In re Cole,* 104 B.R. 736, 738 (Bankr.D.Md.1989)(court construed Maryland law to preclude right of offset in utility deposit claimed exempt); *In re Laues,* 90 B.R. 158, 160–62 (Bankr.E.D.N.C.1988)(setoff in exempt credit union fund denied based on state law); *In re Wilde,* 85 B.R. 147, 148 (Bankr.D.N.M.1988)(noting that overwhelming majority of state courts prohibit offset against exempt property, court refused offset in exempt bank funds); *Commerce Union Bank v. Haffner (In re Haffner),* 12 B.R. 371, 372 (Bankr.M.D.Tenn.1981)(court denied offset in exempt certificate of deposit based on majority view outside bankruptcy). *Cf. In re Pieri,* 86 B.R. at 211 (California would allow offset in unliquidated contract claim notwithstanding exempt status); *In re Swickard,* 133 B.R. 902, 905 (Bankr.S.D.Ohio 1991)(under Ohio law, a debtor may not exempt property from a creditor's right of setoff).

Similarly, the present case would be more readily resolved if the right of offset were based on state law rather than federal statutory law. It is the common law in Tennessee that a creditor may not offset its claim against exempt property. *See In re Haffner,* 12 B.R. at 372 (citing, *inter alia, Gregg v. New Careyville Coal Co.,* 161 Tenn. 350, 31 S.W.2d 693 (1930)(employer prohibited from offsetting claim against exempt workers compensation award); *Collier v. Murphy,* 90 Tenn. 300, 16 S.W. 465 (1891)(exempt wages not subject to setoff by employer)). Because there would be no right outside of bankruptcy to offset an obligation against exempt property, similarly no offset right would be preserved in bankruptcy by § 553.

both dischargeable and nondischargeable taxes. Congress rejected this draft of section 522(c) in favor of the House provision, which under section 522(c)(1) as enacted, limits the exemption exception to taxes nondischargeable under section 523(a)(1). *In re Monteith*, 23 B.R. at 604. Based on this history, the majority courts have concluded that "Congress did not intend that exempt property be liable for discharged tax debts, through set-off or otherwise." *In re Alexander*, 225 B.R. at 150.

The courts which have permitted offset despite a debtor's claim for exemption have done so based primarily on the language of section 542(b). This provision requires payment to the trustee of a debt which is property of the estate unless the debt is subject to offset. *See* 11 U.S.C. § 542(b).[3] As noted by the court in *Eggemeyer*, "[t]his section enables a creditor who has a valid right of setoff to retain the property, regardless of its exempt status." *In re Eggemeyer*, 75 B.R. at 22. *See also In re Wiegand*, 199 B.R. at 643; *Posey*, 156 B.R. at 916; *In re Runnels*, 134 B.R. at 564; and *In re Sarkis*, 17 B.R. at 176. These courts have also recognized a "distinction between offsetting a mutual obligation and collecting on an unilateral debt." *In re Wiegand*, 199 B.R. at 642.

The majority reject the assertion that § 542(b) is controlling. *See In re Jones*, 230 B.R. at 881–82; *In re Alexander*, 225 B.R. at 150–51. The *Jones* and *Alexander* courts maintain that § 542(b)'s exception from turnover on behalf of a creditor who has a right of offset is only applicable to turnover of "property of the estate." *Id.* According to these courts, because property exempted by a debtor is no longer property of the estate, § 542(b) is inapplicable. Instead, the property is subject to turnover under § 542(a), which requires an entity that is in possession of property that the debtor may exempt to deliver such property to the trustee. There is no express exception in that provision for a creditor with a right of offset. *See* 11 U.S.C. § 542(a).[4]

With all due respect to the majority courts, this court disagrees with their conclusions in all respects and agrees with the minority courts. As noted above, the majority maintain that subsection (a) of § 542 rather than subsection (b) is the determinative turnover provision; that subsection (a) pertains to turnover of exempt property for which there is no stated exception for offset rights; and that subsection (b) applies to turnover of property of the estate for which there is an offset exception. *In re Jones*, 230 B.R. at 881–82; *In re Alexander*, 225 B.R. at 150–51. Subsection (a), however, does not pertain solely to turnover of exempt property. Instead, it also requires turnover of "property that the trustee may use, sell, or lease under section 363." *See* 11 U.S.C. § 542(a). Section 363 of the Bankruptcy Code permits a trustee to "use, sell, or lease ...

---

3. 11 U.S.C. § 542(b) provides:
 Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

4. 11 U.S.C. § 542(a) specifically provides:

 Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

property of the estate." *See* 11 U.S.C. § 363(b). Thus, by implication, § 542(a) addresses not only turnover of exempt property but also turnover of property of the estate.

■ The relevant distinction between subsections (a) and (b) of section 542 is not that one applies to turnover of exempt property and the other applies to turnover of property of the estate as the *Jones* and *Alexander* courts held; it is that subsection (a) speaks in terms of turnover of property whether exempt or of the estate, while subsection (b) pertains to payment of a debt. *Cf.* 11 U.S.C. § 542(a) *with* § 542(b). *See also In re Laues,* 90 B.R. 158, 162 (Bankr.E.D.N.C.1988). Subsection (a) requires anyone holding exempt property or property of the estate to turnover the property to the trustee, while subsection (b) requires an entity that owes a debt that is property of the estate and that is matured, payable on demand or order, to pay this debt to the trustee.

This distinction is important for offset purposes because mutual obligations must exist, i.e., a debt owed to the debtor and a claim against the debtor, in order for an offset to take place. Since § 542(a) only addresses property of the debtor or of the estate held by a third person, rather than a debt owed to either, offset does not even come into play. *See Brendern Enter., Inc. v. Micro–Acoustics Corp. (In re Brendern Enter., Inc.),* 12 B.R. 458, 460 (Bankr.E.D.Pa.1981)(equipment was not subject to setoff because it was owned by the bankruptcy estate rather than owed to it). While subsection (a) may encompass funds held by another that is property of the estate, *see Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1037–38 (5th Cir.1987); that is not the same as a debt owed to the debtor within the contemplation of subsection (b). *See Hollis v. State Employees' Retirement Sys. of Illi-*

*nois (In re Groves),* 120 B.R. 956, 964 (Bankr.N.D.Ill.1990)(an action under § 542(a) to recover cash which is property of the estate is more in the nature of declaratory or injunctive relief than an action under § 542(b) which requires establishing the existence of a debt and results in a money judgment); *L.P. Maun, M.D., Ltd. v. Salyapongse (In re L.P. Maun, M.D., Ltd.),* 92 B.R. 790, 796 (Bankr.S.D.Ill.1988)(the funds held by creditor were proceeds of debtor's accounts receivable and thus were property of the bankruptcy estate rather than a debt owed to debtor which could be used for setoff).

■ As stated by one court:
A setoff is applicable only where the debtor and creditor "owe" one another. It is inapplicable where the debtor's property is in the possession of the creditor as bailee or trustee. In such an instance, the property is "owned" by the bankruptcy estate, and the creditor's obligation as bailee or trustee cannot form the basis for a debt which the creditor may set off against his claim against the debtor.

*Marshall v. Shipman Elevator Co. (In re Marshall),* 240 B.R. 302, 304 (Bankr. S.D.Ill.1999). Thus, the offset exception is absent from § 542(a)'s turnover requirement because there is no "debt" to offset, not because exempt property is being turned over.

In the present case, the tax refund which the debtor is seeking to recover from the IRS is an obligation owed to her, rather than funds belonging to her. *See In re Fishbein,* 245 B.R. 36, 38 (Bankr.D.Md.2000)(federal and state tax refunds are debts owing to debtors rather than wages). *See also United States v. Neary (Matter of Armstrong),* 206 F.3d 465, 472 (5th Cir.2000)("Because the debtor does not have a continuing interest in

the tax overpayment under § 541(a)(1), other than that created by [26 U.S.C.] § 6511, the trustee cannot use § 542(a) to create interests not otherwise in existence."). *Compare Strumpf,* 516 U.S. at 21, 116 S.Ct. 286 (bank account consists of nothing more or less than a promise to pay, from the bank to the depositor, rather than money that belongs to the depositor and is held by the bank), *with United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)(property of the debtor seized by IRS prepetition remains the debtor's property until a sale takes place and thus is subject to the turnover requirement of § 542(a)). As such, any turnover request falls within subsection (b) of § 542 rather than under subsection (a), and is therefore subject to the offset rights preserved by § 553.

Section 542(b)'s offset exception to the requirement that a debt owed to the estate must be paid to the trustee is consistent with the offset preservation provision of § 553. Furthermore, notwithstanding their apparent conflict, both of these provisions can be reconciled with § 522(c)'s exemption protection language. Once a right of offset preserved by § 553 has been established in a debt owed to the estate, a debtor may claim an exemption only in the balance of the debt turned over to the estate after the offset has been exercised. Thereafter, the exempted property is protected from all other prepetition debts pursuant to § 522(c).

■ "It is a well-established principle of statutory construction that, whenever possible, statutes are to be construed so that no clause, sentence or word is rendered void or contradictory." *Illinois v. Consolidated Rail Corp.,* 589 F.2d 1327, 1331 (7th Cir.1978). The interpretation suggested by this court harmoniously reconciles and gives meaning to all statutes in

question, including § 553 which plainly states that "this title does not affect any right of a creditor to offset a mutual debt" except as otherwise provided in that section and in §§ 362 and 363. The legislative history to § 553 reiterates that "the right of setoff is unaffected by the bankruptcy code ...." H.R. REP. No. 95–595, 1st Sess. 377 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6333; S. REP. No. 95–989, 2d Sess. 91–92 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877. As construed by another bankruptcy court in this state, once the requirements for setoff have been established, "that right of setoff is not affected by any provision of title 11, except, as noted in section 553(a) itself, sections 362 and 363." *In re Holder,* 182 B.R. at 776.

This court disagrees with the majority's conclusion that allowing exemption rights under § 522(c) to supersede a creditor's setoff rights under § 553 gives effect to both provisions and prevents the nullification of § 522(c). To the contrary, by giving primary effect to the exemption rights of a debtor, the offset right of a creditor is often completely nullified, as would be the result in the instant case. It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of offset. As stated by the district court in *Wiegand:*

> Allowing setoff against exempt property would not undermine the general policy behind the Bankruptcy Code because a debtor will not be denied the ability to hold property exempt from liability for pre-petition debts. Only creditors who possess a valid setoff right can offset their obligation with a debtor's exempt property. Under 11 U.S.C. § 522, debtor can still exempt property

from the reach of all other creditors possessing pre-petition claims. *In re Wiegand,* 199 B.R. at 642.

The second rationale offered by the majority courts in denying offsets in exempt property is that this construction is consistent with the fresh start policy of the Bankruptcy Code. However, as shown by the eighteen categories of debts that are excepted from discharge under § 523(a), this policy is not always paramount and is often subordinated to other social and economic concerns and objectives. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start."). Just as the Bankruptcy Code's general policy in favor of a fresh start must give way to the specific exceptions to discharge set forth in the Code, it must also bow to the more specific provision preserving setoff found in § 553. *See, e.g., In re Alibatya,* 178 B.R. 335, 337 (Bankr.E.D.N.Y. 1995) ("Courts are bound by these Congressional judgments that general bankruptcy policy give way to more specific policy considerations.").

■ Furthermore, as noted by the bankruptcy appellate panel in *Pieri* when considering this issue, "recognition of the preeminence of the right of setoff [is] in accord with the special status granted setoff under the Code." *In re Pieri,* 86 B.R. at 213. "The right of setoff is of ancient derivation and has been embodied in every bankruptcy law the United States has enacted." *Big Bear Super Mkt. No. 3 v. Princess Baking Corp. (In re Princess Baking Corp.),* 5 B.R. 587, 589 (Bankr. S.D.Cal.1980). Setoffs in bankruptcy are generally favored and a presumption in favor of their enforcement exists. *See Kentucky Cent. Ins. Co. v. Brown (In re Larbar Corp.),* 177 F.3d 439, 447 (6th Cir. 1999); *Carolco Television Inc. v. NBC (In re De Laurentiis Entertainment Group Inc.),* 963 F.2d 1269, 1277 (9th Cir.1992).

With regard to the majority courts' assertion that their conclusion is supported by the legislative history to § 522(c), it must be noted that the legislative history to this provision does not mention setoff rights in any respect whatsoever or whether they may be defeated by an exemption. The history simply reveals that in connection with the enactment of the Bankruptcy Act of 1978, Congress debated whether exempt property should remain liable for all taxes or just nondischargeable taxes, ultimately limiting liability to taxes excepted from discharge under § 523(a)(1). However, the conclusion that exempt property is not liable for discharged taxes does not necessarily preclude offset against property claimed exempt. As the *Wiegand* court recognized, there is a distinction between collecting on a unilateral debt and offsetting a mutual obligation. *In re Wiegand,* 199 B.R. at 642. The majority courts relying on legislative history may have been persuaded by the fact that the IRS was seeking an offset against the debtor's discharged tax liability. *See In re Jones,* 230 B.R. at 876; *In re Alexander,* 225 B.R. at 147; *In re Monteith,* 23 B.R. at 602. If debts other than tax obligations had been involved, the legislative history would have provided no basis for the denial of offset.

■ Based on the foregoing analysis, this court concludes that the debtor herein has no greater exemption rights with respect to her tax refund than she would have had if this bankruptcy case had not been filed. It has been recognized that "[i]f rights of setoff were not preserved in bankruptcy, creditors might be more inclined to exercise a right of setoff under applicable nonbankruptcy law at an earlier

stage, rather than risk losing the right altogether in a subsequent bankruptcy proceeding. By recognizing and protecting the right, the Bankruptcy Code removes an incentive that might otherwise lead a creditor to take precipitous action." 5 COLLIER ON BANKRUPTCY ¶ 553.02[2] (15th ed. rev.2000).

## C. EFFECT OF DISCHARGE ON THE OFFSET RIGHT

■ This issue was recently resolved by this court in its unpublished opinion in *In re Ketelsen,* No. 99–20545 (January 16, 2001). In that decision, it was noted that there was an apparent conflict between section 553, preserving the right of setoff, and section 524(a)(2), which provides that a bankruptcy discharge "operates as an injunction against ... an act, to collect, recover or offset any such debt as a personal liability of the debtor." This court observed that this conflict was reconciled in *Conti,* wherein the court concluded that § 524(a)(2)'s offset injunction was limited to attempts by a creditor to offset discharged debt against a **postpetition** obligation to the debtor, and did not affect the offset of mutual **prepetition** obligations permitted by § 553. *In re Conti,* 50 B.R. at 149 ("[Section] 524(a)(2) is not meant to extinguish the right to setoff which is preserved in § 553 of the Code."). The *Conti* court first noted that it was well-settled that the automatic stay does not destroy the right to setoff itself, but merely prohibits the exercise of that right, and that courts have allowed a creditor relief from the stay in order to exercise setoff rights. The *Conti* court then found no basis for offset rights to be extinguished upon discharge.

Nothing in the Code or in the case law would indicate that discharge would bar a creditor from exercising a right to setoff which existed at the time of filing the petition. [Citation omitted.] To

hold otherwise would mean that if a creditor failed to file for relief from stay or failed to have its relief from stay granted prior to discharge, its right to setoff would be lost. In addition, to follow this line of reasoning would mean precluding a third party who stands as both debtor and creditor of the bankrupt from effecting a setoff upon demand by the trustee in bankruptcy for the balance of the debt due to the debtor, which demand may be made after the debtor has received his discharge.

... [T]here would appear to be no reason why a setoff should not be allowed [postdischarge] ... as neither the Code nor the Rules of Bankruptcy Procedure provide a timetable by which setoff must be accomplished.

*Id.* Based on this analysis, the *Conti* court concluded that the IRS did not violate the discharge injunction when it offset the debtor's tax refund, the right to which had arisen prepetition, against the debtor's discharged obligations to the IRS. *Id.*

This court further noted in the *Ketelsen* memorandum opinion that most courts construing this issue have agreed with the *Conti* result. *See Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1539 (10th Cir.1990); *Camelback Hospital, Inc. v. Buckenmaier (In re Buckenmaier),* 127 B.R. 233 (9th Cir. BAP 1991); *In re Wiegand,* 199 B.R. at 641; *Reich v. Davidson Lumber Sales, Inc.,* 154 B.R. 324, 334 (D.Utah 1993); *Krajci v. Mt. Vernon Consumer Discount Co.,* 16 B.R. 464, 466 (E.D.Pa.1981); *In re Thompson,* 182 B.R. at 154; *In re Runnels,* 134 B.R. at 565; *In re Morgan,* 77 B.R. 81, 82–83 (Bankr. S.D.Miss.1987); *In re Eggemeyer,* 75 B.R. at 21; *Blake v. Handy (In re Handy),* 41 B.R. 172, 173 (Bankr.E.D.Va.1984); *Ford v. Darracott (Matter of Ford),* 35 B.R. 277, 280 (Bankr.N.D.Ga.1983); *Slaw Constr. Corp. v. Hughes Foulkrod Constr. Co. (In*

*re Slaw Constr. Corp.)*, 17 B.R. 744, 748 (Bankr.E.D.Penn.1982). *But see Dezarn v. First Farmers Bank of Owenton (In re Dezarn)*, 96 B.R. 93, 95 (Bankr.E.D.Ky. 1988); *Johnson v. Rutherford Hospital (In re Johnson)*, 13 B.R. 185, 189 (Bankr. M.D.Tenn.1981).

This court agreed with the majority's conclusion because it gave effect to both § 553 and § 524(b) and because it was consistent with the rights of a secured creditor granted to a setoff creditor under § 506(a). "Just as a secured creditor is free, notwithstanding discharge of the debtor's personal liability, to enforce its lien rights in the property once the stay has been lifted, a creditor with a right of offset may exercise this right postdischarge." *In re Ketelsen*, No. 99–20545 at p. 13. *See also In re Thompson*, 182 B.R. at 154 (in light of § 506(a), a right of setoff survives discharge just as much as a claim secured by a mortgage or any other lien); *Couture v. Pawtucket Credit Union*, 765 A.2d 831, 833 (R.I.2001) ("Because 'a bankruptcy discharge extinguishes only one mode of enforcing a claim namely, an action against the debtor in personam' [citation omitted], it leaves intact other modes of enforcement, including, without limitation, an action against the debtor in rem [citation omitted], as well as a creditor's pre-bankruptcy right to set off deposited funds against a mature debt owing to the creditor."); Samuel R. Maizel, *Setoff and Recoupment in Bankruptcy*, 753 PLI/Comm 733, 839 and 843 (1997) ("Discharge of the debtor does not eradicate in rem liability which may exist against assets, including monies" and "[t]o hold that prepetition claims may not be setoff against prepetition debts postconfirmation ignores setoff's status as a secured claim.").

In the present case, this court sees no reason to disagree with the conclusion previously reached by it in *Ketelsen*. Accord-ingly, the debtor's argument that the United States' offset request should be denied because a discharge order has been entered in this case is without merit.

### D. EFFECT OF STAY VIOLATION

Under 11 U.S.C. § 362(a)(7), the filing of a bankruptcy petition operates to stay "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." The IRS's effectuation of the offset violated the automatic stay despite its lack of knowledge of the debtor's bankruptcy case at that time. *See In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D.Tenn.2000)(a technical violation occurs when a creditor violates the provisions of section 362(a) without knowledge that an active bankruptcy case is pending). The debtor maintains that because of this violation, the United States' right of offset should be denied.

The courts which have considered the issue have disagreed as to whether the right of setoff should be denied to a creditor who has violated the automatic stay. *Compare United States v. Ruff (In re Rush–Hampton Indus., Inc.)*, 98 F.3d 614, 615–17 (11th Cir.1996); *In re Jones*, 230 B.R. at 882–83; *United States v. Morgan (In re Morgan)*, 196 B.R. 758, 762 (E.D.Ky.1996); *Gribben v. United States (In re Gribben)*, 158 B.R. 920, 925 (S.D.N.Y.1993); *Weems v. United States (In re Custom Center, Inc.)*, 163 B.R. 309, 318 (Bankr.E.D.Tenn.1994); *Kroh Operating LP v. Barnett Bank of Southwest Florida (In re Kroh Bros. Dev. Co.)*, 101 B.R. 114, 118 (Bankr.W.D.Mo.1989); *Matter of Lee*, 40 B.R. at 127 (all permitting offset notwithstanding stay violation); *with First Union Nat'l Bank of Florida v. Abbey Fin. Corp. (In re Abbey Fin. Corp.)*, 193 B.R. 89, 93 (Bankr.D.Mass.1996); *Official Comm. of Unsecured Creditors v. New*

*York State Dep't of State (In re Operation Open City, Inc.),* 148 B.R. 184, 194 (Bankr. S.D.N.Y.1992); *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.),* 103 B.R. 302, 305 (M.D.Fla.1989)(denying offset due to stay violation). *Cf. Shugrue v. Chemical Bank, Inc. (In re Ionosphere Clubs, Inc.),* 177 B.R. 198, 209 (Bankr.S.D.N.Y.1995)(because of stay violation, right of setoff reduced by trustee's expenses in turnover action). Notwithstanding § 553's mandatory language, the application of setoff is permissible and lies within the equitable discretion of the court. *In re Larbar Corp.,* 177 F.3d at 447; *Du-Voisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 332 (6th Cir.1987). Nonetheless, the Sixth Circuit Court of Appeals has held that based on the language of § 553, there is a presumption in favor of setoff, unless it would "prejudice other third-party creditors." *In re Larbar Corp.,* 177 F.3d at 447.

In the present case, there are no "other third-party creditors" which would be prejudiced by the allowance of the setoff. And, the equities do not lie in favor of denying setoff. The IRS's stay violation was inadvertent, attributable to the debtor's own failure to schedule HUD as a creditor for notice purposes. In light of the court's ruling regarding the debtor's exemption claim, there is no indication that the United States would not have been granted relief from the stay if it had been requested prior to the setoff. *See In re Gribben,* 158 B.R. at 925 (setoff permitted notwithstanding stay violation where IRS would have been entitled to stay relief if timely requested); *In re Jones,* 230 B.R. at 883 (since stay request would have been granted, violation, although not justifiable, was harmless). Accordingly, the IRS's inadvertent stay violation does not preclude the United States' right of offset.

### E. Post Facto Stay Relief

▇▇▇ In light of the foregoing conclusions, the only remaining issue before this court is whether the United States' request for post facto relief from the stay should be granted. In other words, should the automatic stay be annulled in order to validate the offset already effectuated by the IRS on behalf of HUD? The definitive case on this issue in the Sixth Circuit is *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993). In *Easley,* the plaintiffs commenced a state court products liability action against Pettibone, unaware that Pettibone had previously instituted bankruptcy proceedings. The issue before the Sixth Circuit Court of Appeals was whether commencement of the state court action in violation of the stay was void and thus barred by the statute of limitations, or merely voidable, and therefore subject to cure by annulment of the stay. *Id.* at 907. The "power to annul 'permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay.' " *Id.* at 910. After reviewing decisions from other circuits and the distinction between the terms "void" and "voidable," the court concluded that:

> [A]ctions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

*Id.* at 911.

This court concludes that the "limited equitable circumstances" referenced in *Easley* are present in the instant case.

The debtor did not give notice of the bankruptcy filing to the HUD and as a result the government violated the stay. The debtor now seeks to utilize that inadvertent stay violation as a defense to the right of offset even though the violation resulted from her own omission. Except for this violation, the debtor has no other defense to the United States' setoff right. And, but for this violation and the ensuing motions before this court, the government could have waited until discharge was entered and then exercised its right of offset without permission from this court. The fact that the United States took this action prematurely due to the debtor's own inadvertence does not present a sound basis to refuse the United States' request for post facto relief from the automatic stay. Other courts presented with similar facts have agreed, especially where stay relief would have been granted prospectively, the stay violation was not willful and no damages or harm resulted from the violation. *See In re Morgan,* 196 B.R. at 762 (retroactive relief should be given where violation was inadvertent and no dispute that stay relief would have been granted in first place); *Goldman v. United States (In re Schield),* 242 B.R. 1, 5 (Bankr.C.D.Cal.1999) (annulled stay to validate setoff where violation was inadvertent); *In re Thompson,* 182 B.R. at 155 (stay retroactively lifted to validate offset).

### III.

In light of the foregoing, an order will be entered contemporaneously with the filing of this memorandum opinion granting the United States' motion for relief from stay and denying the debtor's request for affirmative relief.