In re Dennis Eugene **MOORE**, Debtor.

**Dennis Eugene Moore, Plaintiff**

v.

**United States Department of Housing and Urban Development, Defendant.**

**Bankruptcy No. 04–02949.
Adversary No. 05–07108.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 20, 2006.

Evelyn K. Krippendorf, Roanoke, VA, for Debtors.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

At Roanoke in said District this 20th day of April, 2006:

The matter before the court is the debtor's complaint against the United States Department of Housing and Urban Development ("HUD") to recover his 2003 federal income refund which HUD set off against the debtor's pre-petition HUD Title I debt. The debtor also seeks a finding that HUD has violated the § 362 automatic stay. For the reasons stated in this

---

1. The debtor's spouse, Daisy Carol Kirkman Moore, was assigned Case no. 04–03203 following bifurcation and conversion, and her Chapter 7 case was dismissed on motion on August 5, 2004.

Decision and Order, the debtor's motion for turnover is denied.

## BACKGROUND

On July 15, 2004, the debtor and his spouse filed a joint Chapter 13 petition for relief. On August 2, 2004 the joint case was bifurcated and the debtor's case was converted to Chapter 7.[1] On October 30, 2004 the debtor received his discharge and the case was closed. On June 22, 2005 the case was reopened on the debtor's motion to reopen and pursue withheld tax refunds. The debtor filed the immediate adversary proceeding on July 26, 2005 to recover his 2003 tax refunds intercepted by HUD. The debtor alleges in his complaint that HUD violated the § 362 automatic stay by intercepting the debtor's tax refund when the stay was in effect and seeks return of the funds.

The debtor states that HUD intercepted the tax refund in the approximate amount of $3,000.00 for a debt owed on a foreclosed house. According to the debtor, the mortgage company and HUD were listed in the debtor's bankruptcy schedules for a debt that arose prepetition. The debtor states that he claimed the tax refund as exempt in his bankruptcy schedules and on a timely filed homestead deed. The debtor claims that despite telephone contact with HUD representatives requesting return of the refund, HUD has not returned calls or the funds.

One day after the bankruptcy petition was filed, HUD administratively offset the debtor's 2003 federal income taxes for delinquent HUD Title I debt. HUD argues that it conducted a valid offset of its debt with the debtor pursuant to 11 U.S.C. § 553 [2]. On September 8, 2005 HUD filed a

---

2. "[T]his title [11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case...."
11 U.S.C. § 553.

motion for relief in the main case to affirm its right to setoff, presumably due to HUD's understanding that the setoff was filed post petition.

On September 29, 2005 a hearing was held on the complaint of the debtor. The parties appeared and represented to the court that no relevant facts were at issue, and that the dispute was confined to issues of law susceptible of disposition by written briefs. The court ordered a schedule for the debtor and HUD to submit briefs and supplemental authority on the matter and allowed for the parties to request oral argument by December 23, 2005, or the court would decide the matter based on the written authority. Neither party submitted supplemental written authority, nor requested oral argument, and the court took both matters of (1) the complaint for turnover of property in this adversary proceeding, and (2) the motion for relief in the main case under advisement. The matters are now ripe for decision.

### LAW AND DISCUSSION

This court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334. This is a case filed under title 11, and the court may hear and determine such proceeding under 28 U.S.C. § 157(b)(2)(O). Venue is proper in this District under 28 U.S.C. § 1409(a).

■■ The Code preserves the rights to setoff that exist under nonbankruptcy law as a matter of efficiency for parties holding mutual debts to resolve their liabilities. 5 COLLIER ON BANKRUPTCY ¶ 553.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Generally in a setoff, a creditor that is simultaneously indebted to the debtor can deduct, or offset[3], the debtor's claim from his obligation to the debtor. The

Code does not itself create the setoff rights in § 553, but rather incorporates into bankruptcy law standing equitable setoff rights that exist under other applicable law. *Id.* at ¶ 553.01[2].

■■ There are three elements necessary to establish a creditor's right to a setoff:

1) a debt owing by the creditor to the debtor which arose before the commencement of the case;

2) a claim of the creditor against the debtor which also arose before commencement of the case; and

3) mutuality of the debt and claim.

*In re A & B Homes,* Ltd., 98 B.R. 243, 248 (Bankr.E.D.Va.1989). The creditor must establish these elements by a preponderance of the evidence.

■■ The term "debt" means liability on a claim. 11 U.S.C. § 101(12). The concept of a "claim" is broadly construed under the Code and is intended to encompass virtually any type of obligation in a monetary equivalence. 5 COLLIER ON BANKRUPTCY ¶ 553.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). The word "mutuality" is not defined by the Code, but the term expresses the *quid pro quo* nature of reciprocal debts between a debtor and a creditor. BLACK'S LAW DICTIONARY 1248 (6th ed.1990). In general, the question of whether a claim arose prepetition is a question of federal law and not state law, and in the Fourth Circuit, courts are to apply the so-called "conduct test" to determine if the acts committed giving rise to the claim occurred pre-petition. *Grady v. A.H. Robins Co.,* 839 F.2d 198, 201–03 (4th Cir. 1988). Once the rights to setoff are established, an allowed claim of the creditor is

---

**3.** The banking industry commonly refers to a "setoff" as an "offset", and the words are interchangeable.

secured up to the extent of the amount subject to setoff. 11 U.S.C. § 506(a).

In this matter, HUD intercepted the taxes owed to the debtor by the IRS pursuant to 26 U.S.C. § 6402(d) and 31 U.S.C. § 3720(A), collectively known as the Federal Intercept Statute. HUD asserts that the debtor defaulted on a loan assigned to it by a non-government lender[4] which originated the loan to the debtor under Title I of the National Housing Act as amended at 12 U.S.C. § 1702 *et. seq.* HUD claims it pursued the debt and sent notice to the debtor on October 5, 1998 of its intent to collect federal payments through the administrative offset and provided instructions for the debtor to appeal HUD's decision. HUD avers that the debtor never filed an appeal of the administrative decision. On July 16, 2004, HUD, through the IRS, administratively offset the debt.

▬▬▬ The debtor does not contest the factual allegations that he owed a prepetition debt to HUD for the defaulted loan, but it is the debtor's contention that he is owed the tax refunds[5]. The mutuality of debt requirement specifies that the claim and off-setting debt must be between the same parties. The debtor does not contest the mutuality of the debt, but this court has strictly construed the mutuality requirement to exclude "triangular" setoffs by third parties from eligibility under § 553. *See In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr.W.D.Va.1981). However, a general exception to the mutuality rule allows setoff by departments different from those holding actual claims within the federal government, which in the aggregate is considered to be a single "unitary creditor" for setoff purposes. *See In re Britton*, 83 B.R. 914, 919 (Bankr.E.D.N.C. 1988).

▬▬▬ Under the Code, the right to a § 553 setoff in bankruptcy is founded upon the right to a setoff in other applicable law. HUD claims the administrative setoff was authorized under the Federal Intercept Statute, 26 U.S.C. § 6402, which provides:

Collection of debts owed to Federal agencies.—

(1) In general.—Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than past-due support subject to the provisions of subsection (c)) to such agency, the Secretary [of the Treasury] shall—

(A) reduce the amount of any overpayment payable to such person by the amount of such debt;

(B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

(C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

---

**4.** Highland Home Brokers, Inc., originally executed a retail installment contract with the debtor for a loan in the original amount of $34,975.80 with annual percentage rate of interest of 12.5% on October 26, 1992. On the same day, Highland assigned the Note to Logan–Laws Financial Corporation, which subsequently assigned the loan to CIT Group. The debtor defaulted on the loan on October 31, 1995. Following default, CIT Group repossessed the mobile home and resold it for $15,500.00. CIT filed a claim for the defi-

ciency with HUD for $23,759.18. HUD paid the deficiency claim, and CIT assigned its interest in the note to HUD.

**5.** Federal and state tax refunds are eligible for setoff. *See United States v. Ruby (In re Grannan)*, 2002–2 U.S. Tax Cas. (CCH) P 50535 (Bankr.E.D.Va.2002) (Bankruptcy Code); *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 271 Va. 304, 626 S.E.2d 436 (2006) (Virginia state law).

26 U.S.C. § 6402(d). This federal intercept statute, which was enacted as part of the Deficit Reduction Act of 1984, allows the IRS to offset a tax refund against any debt which the taxpayer may owe a federal agency. *In re Bourne,* 262 B.R. 745, 749 (Bankr.E.D.Tenn.2001). After giving notice of the intent to exercise the setoff, the agency must allow sixty (60) days for the debtor either to pay the outstanding debt to the agency, or provide proof that the debt is not legally enforceable. *See* 26 C.F.R. § 301.6402–6 (2006) (stating that this regulation applies to refunds due after April 15, 1992). The decision of the Secretary of the Treasury to exercise a setoff is not subject to review by any administrative agency. 26 U.S.C. § 6406. Generally, a taxpayer subject to a setoff for overpayment of taxes must first apply for a refund with the Secretary before he can receive judicial relief. *See, e.g., Beckwith Realty v. United States,* 896 F.2d 860, 862 (4th Cir.1990).

 Regardless of any established rights to conduct a setoff, post petition acts to conduct a setoff are prohibited by the § 362 automatic stay in the Code. 11 U.S.C. § 362(a)(7). HUD admits that the IRS executed the administrative setoff on July 16, 2004, which is one day following the filing of the debtor's petition. HUD admits that the setoff contravened the § 362 automatic stay, but denies that the administrative setoff constitutes a willful violation of the stay because the agency did not receive notice of the bankruptcy filing until July 22, 2004.[6] HUD moves for retroactive, or *nunc pro tunc,* relief from the court by annulment of the § 362 automatic stay.

 Neither the Supreme Court nor the Fourth Circuit has squarely addressed whether a transfer in violation of the stay is void or voidable. *See Shaw v. Ehrlich,* 294 B.R. 260, 272 (W.D.Va.2003). This court has held that actions taken in violation of the automatic stay are void *ab initio* and without effect, regardless of lack of knowledge of the filing of the petition. *In re La Tempa,* 58 B.R. 538, 540 (Bankr.W.D.Va.1986). On the other hand, this court has found that an annulment[7] of the § 362 automatic stay can be retroactively applied to validate proceedings that otherwise would be void *ab intio. Blue Ridge Bank v. Boswell (In re Boswell),* 206 B.R. 421, 423 (Bankr.W.D.Va.1997). The court entertained HUD's motion for *nunc pro tunc* relief from the § 362 stay by a noticed hearing at which the parties appeared, and whereby the parties agreed to submit the matter to the court in briefs.

 Courts balance the equities when deciding upon an annulment rendering the stay a nullity in relation to the acts of the transgressing party. *Id.* In balancing the equities, though, the significance of the automatic stay weighs heavily against the party seeking an annulment. An oft-cited example of when it is appropriate to grant an annulment is the situation where a creditor violates the stay but does so in good faith and without knowledge thereof. *Id.* In balancing the equities in the case *sub judice,* the debtor does not offer argument to controvert the allegations of HUD that the agency executed the administrative setoff before it received actual notice that the debtor filed his bankruptcy petition. However, HUD waited six years be-

---

6. The proper avenue would have been for HUD to motion the court for relief from the § 362 to effect the setoff by procedures in the bankruptcy court. *See, e.g., United States v. Reynolds,* 38 B.R. 725, 726 (E.D.Va.1984).

7. 11 U.S.C. § 362(d) provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section. such as by terminating, annulling, modifying, or conditioning such stay...."

fore exercising its right to administrative setoff.[8] For the debtor's part, counsel for the debtor claims she contacted HUD to notify them of the bankruptcy filing and requested information about the intercepted tax refund, but received scant assistance and no funds. However, the debtor does not dispute that HUD informed the debtor that it intended to take the administrative setoff as early as October 5, 1998, three years after the debtor defaulted on his loan. The debtor was on notice to pursue his rights as early as his default on the HUD loan in late 1995. He did not. He rested on his rights, and allowed the lender to foreclose on his property. He listed the HUD lender in his bankruptcy schedules, but then sought to reopen his bankruptcy case six months after his case was closed and after his 2003 tax refund was setoff against the debt. Also the debtor has not provided any information that he has followed the tax regulations to contest the setoff decision made by the IRS.

Despite the passage of time and the debtor's failure to address HUD's notice of intent to setoff, the debtor was entitled to exempt from the claims of creditors assets constituting property of the estate as of the date of filing. On the date of filing the 2003 tax refund was property of the estate. *See* 11 U.S.C. § 541(a)(1). Prepetition creditors generally may not execute a post petition setoff on property scheduled as exempt by the debtor. 11 U.S.C. § 522(c). In this case, the debtor scheduled his 2003 tax returns as exempt, and valued the asset at $1.00. Prior to the closing of the case he did not amend his schedules to claim the full amount of the refund exempt even after he discovered

the exact amount of the offset. However, the case has been reopened. Under Federal Rule of Bankruptcy Procedure 1009(a) the debtor may amend schedules "as a matter of course at any time before the case is closed." Thus, the debtor is currently positioned to amend schedules to increase the amount of the claimed exemption. Further, decided case law permits the debtor to amend the homestead deed to alter the amount of the claimed exemption up to the remaining amount of claimed exemption allowed by Virginia Law. *See, e.g., In re Watkins,* 267 B.R. 703, 707 (Bankr.E.D.Va.2001). The Virginia exemption statutes are designed to assist the honest debtor in achieving a fresh start. *In re Sherman,* 191 B.R. 654, 656 (Bankr. E.D.Va.1995) (holding that only exceptional circumstances shall prevent the debtor from amending his schedules).

Annulment of the automatic stay in this case would thwart the intent of both Congress and the Commonwealth of Virginia in providing the statutory mechanisms for equality of creditor treatment (§ 362) and the debtor's fresh start. Va.Code § 34–4 and 11 U.S.C. § 522(b) and (c). HUD violated the automatic stay but there is no evidence that it acted willfully.[9] The court sees no need to sanction the violation of the § 362 automatic stay because HUD will relinquish property of the estate to the Chapter 7 Trustee.

### CONCLUSION

The court finds that the equities of this case do not favor annulment of the stay. Also, the 2003 tax refund is property of the estate to be administered by the Chapter 7 Trustee. Accordingly, it is

---

8. There have been no evidence put forward that debtor was entitled to any tax refunds prior to 2003.

9. While the timing of the offset is circumstantially suspicious HUD claims no actual knowledge of the filing and the debtor did not seek to develop the element of willfulness through evidence.

**ORDERED:**

That the debtor's motion for turnover of his 2003 federal income tax returns is DENIED insofar as to amounts in which the debtor has not exempted his interest in the funds. It is

**FURTHER ORDERED:**

HUD shall pay over the 2003 tax refund to the Chapter 7 Trustee for administration pursuant to the Bankruptcy Code and Rules.